IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01927-KLM

BILLY JACKSON, JR.,

      Plaintiff,

v.

CAROLYN W. COLVIN,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on the **Social Security Administrative Record**

[#10],[2] filed January 7, 2014, in support of Plaintiff's Complaint [#1] seeking review of the

decision of Defendant Acting Commissioner of the Social Security Administration

("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income

benefits pursuant to 20 C.F.R. Pt. 416 ("Title XVI") of the Social Security Act, 42 U.S.C. §§

401-433 (the "Act") and disability insurance benefits pursuant to 20 C.F.R. Pt. 404 ("Title

II") of the Act.  On March 24, 2014, Plaintiff filed an Opening Brief [#15] (the "Brief").  On

April 15, 2014, Defendant filed a Response  [#16] (the "Response").  The Court has

jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The

_____

    [1]  The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See generally Consent Form* [#19].

    [2]  "[#10]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Order.

Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.  Factual and Procedural Background

Plaintiff alleges that he became disabled with back pain and blindness[3] in January 2011[4].  Tr. 55-56.[5]  On January 28, 2011, Plaintiff filed for Title II disability insurance benefits and Title XVI supplemental security income. Tr. 196.  On July 13, 2002, a hearing was held before Administrative Law Judge Maxine Benmour (the "ALJ").  Tr. 51-97.  On August 2, 2012, the ALJ entered her Decision, finding that Plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act" and that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  Tr. 44.  Plaintiff appealed to the Appeals Council, which denied his request for review of the ALJ's decision.  Tr. 6-9.  Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 422.210(a).[6]

---

[3]  Plaintiff does not challenge the ALJ's rejection of his claim of blindness after a vision test was administered to Plaintiff.  Tr. 37; *see also* Tr. 275 (Note from optometrist stating that Plaintiff "has no visual limitations as long as he is wearing glasses" and that his "vision is 20/20 with glasses . . . ."  *See generally Brief* [#15]

[4]  Plaintiff initially alleged that his disability began on August 31, 2009.  Tr. 198.  However, at his July 13, 2012 hearing, he requested that his onset date be amended to January 24, 2011.  Tr. 34, 90-91; *Brief* [#15] at 6.

[5]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 10-1, 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, and 10-8, by the sequential transcript numbers instead of the separate docket numbers.

[6]  Throughout this Order, although I cite to relevant sections of Part 404 of title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Born on December 12, 1981, Plaintiff was 29 years old on January 24, 2011, his amended alleged onset date.  Tr. 196.  Plaintiff did not complete high school and did not obtain a graduation equivalent diploma.  Tr. 43, 56.  Prior to his application for disability insurance benefits and supplemental security income, Plaintiff worked in fast food restaurants and as a temporary laborer.  Tr. 56-57.

Plaintiff states that he was injured in August 2009.  Tr. 55-56, 34.  On September 29, 2010, Plaintiff met with Dr. Marcha Alger, M.D. ("Alger") because he had lower back pain for three days after he fell while playing basketball.  Tr. 325.  Plaintiff was prescribed pain relievers. Tr. 63.  Plaintiff maintains that he exacerbated his existing injury in January 2011 "due to a slip and fall on the ice."  Tr. 56.  In January 2012, Plaintiff asked Dr. Alger for a referral for pain management and she referred him to Dr. John Marta, M.D. ("Marta").  Tr. 358-60, 374.  As discussed in more detail below, the ALJ was provided with medical records from both doctors and considered the medical opinions of both doctors when reaching her decision.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act, had not engaged in substantial gainful activity since the alleged onset date, and that he has severe impairments that significantly limit his ability to perform basic work activities.  Tr. 36-37.  However, the ALJ also concluded that Plaintiff's impairments were not so severe as to meet the requirements of 20 C.F.R. Pt. 404, subpt. P, A'ppx. 1.  Tr. 37.  The ALJ also found that Plaintiff "has the residual functional capacity [("RFC")][7] to perform

_____

[7]  RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities."  SSR 96-8p, 1996 WL 374184 at * 2.  It is assessed "based on all of the relevant

sedentary work" with certain limitations, Tr. 38, and that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." Tr. 43. Specifically, based on the testimony of Linda M. Ferra (the "VE"), an impartial vocational expert, the ALJ concluded that Plaintiff could perform the representative occupations of assembler, with 26,000 such jobs existing in the national economy and 1,300 in Colorado, and order clerk, with 25,000 such jobs existing in the national economy and 2,000 in Colorado. Tr. 43. She therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 44.

Plaintiff brings four challenges to the ALJ's findings. First, Plaintiff argues that the ALJ "misapplied the 'treating physician rule' and misconstrued the functional capacity evidence . . . ." *Brief* [#15] at 1, 14-17. Second, Plaintiff maintains that the "ALJ relied on incompetent and immaterial evidence in making credibility determinations regarding the intensity, persistence, and functionally limiting effects of [Plaintiff's] symptoms." *Id.* at 1, 17-19. Third, Plaintiff argues that the "ALJ erred when, relying on the vocational expert's testimony, she found that the jobs of assembler and order clerk were within [Plaintiff's] physical and mental restrictions." *Id.* at 1, 19-20. Finally, Plaintiff argues that the "ALJ erred when she found that the jobs of assembler and order clerk existed in significant numbers in the national and local economies." *Id.* at 1, 20-21. The Court will address each of these arguments in turn.

---

evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'" *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012).

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. § 423(d)(3), (d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues *de novo*.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993).  Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.      Legal Standard

The SSA uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. § 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d

1140, 1142 (10th Cir. 2004)).  If not, the ALJ then considers, at step two, whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the

record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying him supplemental social security income benefits and disability insurance benefits. *Brief* [#15] at 1. Specifically, Plaintiff argues that the ALJ erred by: (1) misapplying the "treating physician rule," and, therefore, improperly weighed the opinion evidence; (2) relying on "incompetent and immaterial evidence" when making credibility determinations; (3) relying on the VE's testimony and finding that Plaintiff was capable of performing the jobs of assembler and order clerk; and (4) finding that those jobs exist in significant numbers in the national and local economies. *See generally id.*

### A. Whether the ALJ Improperly Weighed the Opinion Evidence

Plaintiff argues that the ALJ erred in connection with weighing the opinions of Dr. Alger and Dr. Marta. *Id.* at 1, 9-17. Specifically, Plaintiff maintains that "the ALJ explicitly gave greater weight to the functional capacity opinions of Dr. Alger, [Plaintiff's] primary care physician, then to the functional capacity opinion of Dr. Marta, [Plaintiff's] treating orthopedic physician." *Id.* at 14. Plaintiff argues that both doctors are "treating physicians within the meaning of the rules" and that Dr. Marta's "opinion [ ] deserves greater weight . . . ." *Id.* at 15. Plaintiff maintains that because both doctors were treating physicians, the ALJ was required to apply the six factors found in 20 C.F.R. §§ 404.1527(c)(2),

8

416.927(c)(2).  *Id.*

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001).  However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).  Generally, treating physicians' opinions are given controlling weight.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Pursuant to the SSA, the "opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the claimant's] case record.'"  *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th cir. 2003) (brackets in original).  As the Tenth Circuit has explained:

> The treating physician's opinion is given particular weight because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(d)(2).  This requires a relationship of both duration and frequency.  "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long*

*period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added). . . . .  Moreover, a longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits.

. . .

A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.*

*Doyal*, 331 F.3d at 762-63.

Here, the ALJ assigned controlling weight to Dr. Alger's opinion because "she is the primary treating doctor and has a longer history with the claimant." Tr. 41.  This conclusion is supported by the medical records.  Plaintiff met with Dr. Alger and others from her practice, Peak Vista Community Health Centers, from October 19, 2009 through at least March 17, 2011.  Tr. 325, 306.  This included appointments on October 19, 2009 (immunization only); December 21, 2009 (immunization only); January 6, 2010; February 12, 2010; September 29, 2010; October 26, 2010; January 11, 2011; January 24, 2011 (MRI imaging of spine only); January 27, 2011; February 15, 2011; March 17, 2011; April 8, 2011; May 6, 2011; June 7, 2011; September 13, 2011; September 19, 2011; October 7, 2011 (immunization only); December 6, 2011; January 13, 2012; January 30, 2012; March 5, 2012; and March 20, 2012.  Tr. 306-43, 365-66, 369-96.  In contrast, Plaintiff met with Dr. Marta on January 27, 2012; March 12, 2012; and March 22, 2012.  Tr. 352-61. This history shows that Dr. Alger dealt with Plaintiff "over a long period of time" and was

able to obtain "a longitudinal picture of [the claimant's] impairment." *Doyal*, 331 F.3d at 763.  Dr. Marta, on the other hand, met with Plaintiff three times over the course of two months to give Plaintiff a lumbar epidural block.  Depending on the circumstances of a given patient's illness and/or condition, that may be enough time to be deemed a "primary treating doctor," however, in this case, the record makes clear that Plaintiff was referred to Dr. Marta by Dr. Alger for a limited purpose and that Dr. Marta did not have the longitudinal picture of Plaintiff's impairment that Dr. Alger did.  Therefore, the Court concludes that the ALJ did not err by giving greater weight to Dr. Alger's opinion "because she is the primary treating doctor."  Tr. 41.

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the facts provided in 20 C.F.R. § 404.1527."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989).  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001); 20 C.F.R. § 404.1527(c). Under Tenth Circuit case law, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley,* 373 F.3d at 1119 (internal quotation marks and citations

omitted).

The ALJ noted that there were internal inconsistencies in Dr. Marta's opinion and that his opinion "does not appear to be fully supported by the treatment notes." *Id.* This conclusion is also supported by the record. The ALJ explained:

> On March 12, 2012, prior to the third injection, Dr. Marta wrote that the claimant had resolving lower back pain and leg pain, improved since the first visit [ ]. Although he indicated that the claimant could not "engage in a useful occupation," he also checked the box indicating that the claimant could perform sedentary work (defined as "Lift no more than 10 pounds, individual sitting with occasional walking and standing") [ ]. Dr. Marta also indicated that he expected the claimant to be unable to work for 12 months or more and that he could not lift more than two pounds.

Tr. 41. Dr. Marta's March 12, 2012 records regarding Plaintiff state that "[s]ince his first block he reported noticeable improvement in his pain process." That same day, Dr. Marta completed a form regarding Plaintiff's status. Tr. 394-96. Dr. Marta indicated that "[i]n comparison with the last disability determination" there had been a "material improvement in [the] physical . . . condition." Tr. 395. He wrote that at present the improvements did not enable Plaintiff to engage in a useful occupation, but then checked the box indicating that Plaintiff could engage in a sedentary occupation, which would require him to "lift no more than 20 pounds at one time [and] frequently lift[ ] up to 10 pounds." *Id.* On that same page, Dr. Marta checked a box indicating that Plaintiff was disabled to the extent that he was unable to work at any job for 12 months or more. *Id.* On the last page of the form, Dr. Marta noted that Plaintiff was restricted to lifting no more than two pounds at a time. Tr. 396. Dr. Marta's opinions as reflected on this form are internally inconsistent and the ALJ was entitled to discount his opinion as a result. 20 C.F.R. § 404.1527(c)(4) (explaining that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight

we will give to that opinion."); *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (quotation marks and citation omitted)).  Furthermore, Dr. Marta's opinion "addressed the question of disability, which is an issue reserved to the Commissioner." *Lately v. Colvin*, 560 F.App'x 751, 754 (10th Cir. 2014).  Therefore, Dr. Marta's "opinion was not entitled to controlling weight because the issue of disability is not a medical opinion subject to controlling weight." *Id*. (citations omitted).  Therefore, the Court concludes that the ALJ did not err when she decided to give controlling weight to Dr. Alger's opinion and to discount Dr. Marta's opinion.

**B.     Whether the ALJ's Decision Was Supported By Substantial Evidence**

Plaintiff argues that the ALJ relied on statements in Dr. Alger's records "regarding 'possible malingering' and [Plaintiff] lifting 'his kids' in the office as a basis for discrediting [Plaintiff's] statements regarding his pain impairments." *Brief* [#15] at 18.  Plaintiff further argues that "[t]his is error because those statements are inextricably linked to" other statements from Dr. Alger's records that the ALJ found to be incompetent evidence and specifically excluded from her analysis.[8]  *Id*.  The Court finds that the ALJ's decision was supported by substantial evidence and that she did not commit error when concluding that "claimant's testimony and other statements are not entirely credible."  Tr. 42.

---

[8]  Plaintiff also argues that "there is evidence from which a reasonable person could infer that Dr. Alger harbored an arguably unreasonable bias against [Plaintiff]" such as the fact that she "wrote a handwritten note that she disagreed with Dr. Marta's opinion."  *Brief* [#15] at 18-19. Plaintiff interprets it to be "unusual for one physician to directly contradict the recommendations of another treating physician . . . ."  *Id*. at 19.  Whether Plaintiff infers that one doctor was biased against him is immaterial to the question before the Court: was the ALJ's decision supported by substantial evidence?

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted); *see also White*, 287 F.3d at 909. "Nevertheless an ALJ's adverse credibility finding 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Mendez v. Colvin*, --- F.App'x ---, 2014 WL 5334027, at *2 (10th Cir. 2014) (quoting *Wilson*, 602 F.3d at 1144). The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence she relied on in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Therefore, as long as the ALJ links her credibility assessment to specific evidence in the record, her determination is entitled to substantial deference. *Id.* at 910; *see also Qualls*, 206 F.3d at 1372. Such deference is warranted on this record.

The ALJ "is not required to 'identif[y] any specific incredible statements,' so long as the ALJ 'indicat[es] to what extent [s]he credited what [the claimant] said when determining the limiting effect of [the claimant's] symptoms.'" *Bales v. Colvin*, 576 F.App'x 792, 800 (10th Cir. 2014) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1165, 1170 (10th Cir. 2012)) (modifications in original). Here, the ALJ gave specific and legitimate reasons for her determination that plaintiff's testimony was entitled to less than full weight. Tr. 42. For example, she noted that Plaintiff's "statements that he suffers from constant, sharp, stabbing, and pinching pain in his back are not supported by the mild objective findings or by Dr. Alger's opinions that he essentially could perform light work." Tr. 42. The ALJ further notes that "[t]he medical findings indicate very little problem with his left knee and very mild findings in his back on MRI." Tr. 42. She found that "[t]he nearly invalid lifestyle

14

that he described for his daily activities is not credible, based on the medical examinations and treatment.  Examinations repeatedly showed normal gait and little to no lumbar spine tenderness.  He improved considerably with epidural steroid injections."  Tr. 42.

While the ALJ did note that Plaintiff had "been observed lifting his children, and Dr. Alger was concerned about possible malingering," Tr. 42, these were not the only, or even the main bases, for her decision that Plaintiff's testimony was "not entirely credible."  Tr. 42. Instead, the main focus of the ALJ's analysis concerning Plaintiff's credibility is the medical evidence.  Tr. 42.  Further, it was not error for the ALJ to consider the treating doctor's notation that she suspected Plaintiff of malingering.  *See Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 776 (10th Cir. 1990) (affirming decision to deny benefits that took into account a consulting physician's suspicion of malingering and noting that "[c]redibility determinations are peculiarly the province of the finder of fact . . . ."); *see also Taylor v. Colvin*, No. 13-cv-03152-CMA, 2014 WL 4413056, at *3 n.5 (D. Colo. Sept. 5, 2014) (discussing a doctor's reference to claimant's malingering when considering claimant's credibility).  Finally, Plaintiff's argument that Dr. Alger may not have witnessed Plaintiff lifting his children "frequently in the office over many visits without difficulty" is not supported by the records.  *Brief* [#15] at 14.  Dr. Alger's records consistently note if she is relying on a staff member's observation or statement or her own.  For example, on the same date that Dr. Alger noted that Plaintiff frequently lifted his children "in the office over many visits without difficulty," Tr. 365, she also noted that "TH & TG, both MAs, report they've heard pt state that he is a bouncer at a rough nightclub & actually seen him working there."  Tr. 365.  The ALJ questioned Plaintiff about the observations made by Dr. Alger's staff and noted that she was not going to rely on that information in the record.  Tr. 61.

15

However, contrary to Plaintiff's arguments, the ALJ was entitled to rely on Dr. Alger's independent observation and conclusions about her observations.

In addition, as noted by the ALJ, the medical records from Plaintiff's repeated visits to Dr. Alger reflect that he had a normal gait from his alleged onset date through his hearing. Tr. 370, 374, 377, 379, 382, 389, 391, 393, 307. Further, after examining Plaintiff and meeting with him several times, Dr. Alger concluded that, while Plaintiff has degenerative disc disease, he is able to engage in a "light" occupation, meaning one that would require him to lift no more than 20 pounds at one time and/or to frequently lift up to 10 pounds. Tr. 386-87. At the hearing, Plaintiff testified that he can sit for 30-40 minutes before the pain becomes too intense, and then he either walks around or takes medication to relieve the pain. Tr. 66. Plaintiff explained that he walks around his house and that "[a]s long as [he is] on the mediation [he's] okay." Tr. 66. Plaintiff also testified that he can stand for 30-40 minutes at a time and lift 20 pounds. Tr. 66-67. Noting that his daughters are approximately 20 pounds, Plaintiff stated that he could hold one twenty pound object for approximately 10 minutes at a time, but that he could not lift and hold a 20-pound object three to four times in the morning and afternoon. Tr. 75-76. This appears to be mostly consistent with Dr. Alger's opinion. However, Plaintiff also testified that he suffers from sharp, stabbing, and pinching pain "[a]ll of the time." Tr. 65. Later, when questioned by his attorney about hypothetical labor, Plaintiff testified that he would be unable to perform any of the labor suggested. Tr. 81.

Further, the ALJ did not completely discredit Plaintiff's testimony. Instead, she found that Plaintiff's "allegations of disabling symptoms [were not] *fully* credible or reliable." Tr. 42 (emphasis added). The ALJ noted that:

16

> In alleging disability, the claimant essentially asserts that he can perform no substantial gainful activity on a sustained basis as a result of his symptoms. As discussed above, the medical evidence does not support these allegations. Moreover, the claimant's own testimony of pain is not fully credible.  The undersigned finds that the mild objective and clinical findings related to his back pain, and the fact that no treating or evaluating physician persuasively finds him disabled from work, constitute convincing reasons for rejecting his allegations and testimony of excess symptoms.

Tr. 42.  Consequently, the ALJ's credibility determination is linked to substantial evidence and she did not commit error in determining to not fully credit Plaintiff's testimony.

## C.    The VE's Testimony

Plaintiff argues that the ALJ erred when she relied on the VE's testimony and found that the jobs of assembler and order clerk were within Plaintiff's physical and mental restrictions. *Brief* [#15] at 1, 19-20.  Plaintiff maintains that the job of order clerk "does not fall within the restrictions the ALJ concluded applies to Plaintiff." *Id.* at 19.  Plaintiff argues that the ALJ concluded that Plaintiff was limited to "one-to-two step instruction jobs" but that the position of order clerk requires level-three reasoning which is inconsistent with "simple and routine work tasks." *Id.* at 19-20.  Defendant does not contest Plaintiff's assertion that the VE's testimony regarding the position of order clerk was inconsistent with the Dictionary of Occupational Titles ("DOT"), but it argues that the ALJ's finding that Plaintiff could perform the job of assembler was sufficient to meet the agency's obligation when determining whether Plaintiff can perform any gainful and substantial work in the economy at step five of the analysis. *Response* [#16] at 20; *see Yucker*, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy.").

Plaintiff also argues that the ALJ erred in concluding that the job of assembler, DOT

17

734.687-018, 1991 WL 679950, exists in sufficient numbers in the national and local economies. *Brief* [#15] at 20. Plaintiff maintains that it is unlikely that there are 26,000 assembler positions in the national economy and 1,300 in Colorado because these are greater numbers than the 25,000 positions the VE testified existed for the job of food order clerk. *Id.* Plaintiff, therefore, speculates that the VE's testimony actually relates to the job of small products assembler, which, Plaintiff argues he cannot perform. *Id.* First, there is nothing in the record to suggest that the VE was unsure or confused about the job of assembler. Second, the VE's description of the job of assembler coincides with that found in the DOT. *Compare* Tr. 86 *with* DOT 734.687-018, 1991 WL 679950. Therefore, the Court has no reason to second-guess the expert's testimony. Third, Plaintiff's speculation regarding the number of positions cannot be substituted for that of the VE. Fourth, other vocational experts have testified that the job of assembler may exist in the national economy in even greater numbers than the VE indicated. *See, e.g., Durante v. Colvin*, 2014 WL 4852881, at *16 (D. Conn. Aug. 7, 2014) (noting that there were 2,000 local positions in Connecticut and "nationally about 1,500,000" positions for "assembly types of work under DOT 734.687-018"); *Bumpers Tillman v. Colvin*, 2014 WL 2712526, at *13 (S.D. Ala. June 16, 2014) (finding that the job of assembler had "approximately 115,225 available positions in the national economy and approximately 1,320 available positions in the State of Alabama"); *Wright v. Colvin*, No. 13-4136-CV-C-REL-SSA, 2014 WL 2557670, at *14 (W.D. Mo. June 6, 2014) (affirming ALJ's decision which relied on vocation expert's testimony that "the person could work as an assembler, DOT 734.687-018, SVP of 2, with 1,000 in Missouri and 90,000 in the country . . . ."); *Sushank v. Astrue*, 2012 WL 1865455, at *4 (C.D. Cal. May 22, 2012) (noting that the vocational expert testified that there were

18

67,000 assembler jobs nationally and 2,800 such jobs in the Los Angeles area in July 2009).

Finally, because Defendant concedes that, based on the ALJ's RFC determination, Plaintiff cannot work as an order clerk, *Response* [#16] at 20, the Court must determine if the remaining position that the ALJ determined Plaintiff could perform, by itself, constitutes a significant number of jobs as a matter of law. As noted above, the VE testified that there are approximately 2,600 assembler jobs, DOT 734.687-018, in the local economy and approximately 26,000 in the national economy. Tr. 86. Plaintiff "acknowledges that in some cases the courts have found that jobs with 25,000 positions available nationally exist in significant numbers." *Brief* [#15] at 21. He, however, argues that the ALJ was required to "look at a number of factors, including the availability and isolated nature of the job." *Id.* at 22 (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)).

When considering whether a significant number of jobs exist, "the relevant test is *either* jobs in the regional economy *or* jobs in the national economy." *Raymond v. Astrue,* 621 F.3d 1269, 1274 n. 2 (10th Cir. 2009) (emphasis in original). Accordingly, an ALJ may "look[ ] to the national economy—not just a local area" in determining whether there is a significant number of available jobs. *Id.* at 1274. Because the Tenth Circuit has not drawn a bright line above which the number of jobs is significant, the court has provided a list of factors the ALJ may consider when determining if there is a significant number of jobs in the regional and national economies. *See id.* at 1274 n.2. Those factors are: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar,* 966 F.2d at 1330 (showing of 650

19

to 900 available jobs was not sufficient to show a significant number of jobs without evaluating enumerated factors) (citing *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988)); *see also Stokes v. Astrue,* 274 F.App'x. 675, 684 (10th Cir. 2008) (stating that no reasonable fact finder could find that 152,000 jobs available nationally was an insignificant number); *Long v. Chater,* 108 F.3d 185, 188 (8th Cir. 1997) ("Here, the vocational expert testified that Long is capable of performing any of the approximately 650 jobs in the fields of surveillance monitoring, addressing, and document preparation that exist in Iowa, or one of the 30,000 such jobs that exists nationwide.  The ALJ found this to be a significant number, and we agree."); *Knudson v. Astrue,* 10-cv-02905-PAB, 2012 WL 1079130, at *10 (D. Colo. Mar. 30, 2012) ("[T]he combination of 1194 positions available in Colorado with 79,900 positions available nationally is more than a significant amount of existing jobs that plaintiff is capable of performing").  However, the *Trimiar* factors "are not a mandatory list in which in every case each factor must be mechanically analyzed and applied." *Jansen v. Astrue*, No. 12-cv-00753-LTB, 2013 WL 5338505, at *12 (D. Colo. Sept. 24, 2013) (citations omitted).

Further, when, as a matter of law, a significant number of jobs do exist, the ALJ and the Court need not engage in an analysis of the *Trimiar* factors.  *See Gonzales v. Astrue*, No. 08-cv-00518-REB, 2009 WL 440945, at *3 n.3 (D. Colo. Feb. 19, 2009).  As Plaintiff recognizes, this Court has held that jobs with 25,000 positions exist in significant numbers as a matter of law.  *See, e.g.*, *Longrear v. Colvin*, --- F.Supp.2d ---, 2014 WL 983509, at *3 (D. Colo. Mar. 13, 2014) (noting that the argument that the 13,500 jobs available nationally, "either alone or combined with those available regionally" did "not constitute a significant number" would be meritless); *Taylor v. Astrue*, No. 11-cv-01425-CMA,  2012 WL 1520179,

at *8 (D. Colo. April 30, 2012) ("Between the Surveillance system monitor job and the call out operator, the ALJ identified over 25,000 jobs available nationally. The Court finds that this constitutes a 'significant number' of jobs that Plaintiff is capable of performing.") (citations omitted); *see also Gutierrez v. Comm. of Social Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) ("The ALJ did not err in concluding that 2,500 jobs in the State of California constituted a significant number of jobs in the region where [claimant] lived and that 25,000 jobs also signifies a significant number of jobs in several regions of the country."); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number."); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding that 1350 jobs in the local economy was a significant number); *Mendoza v. Colvin*, No. 13-CV-279-SM, 2014 WL 4146808, at *9 (D.N.H. Aug. 19, 2014) (holding that 20,700 jobs in the national economy is a "significant number"); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (affirming denial of social security benefits for claimant when VE testified that 16,763 jobs existed in the national economy and 63 existed in the Finger Lakes region); *Daniels v. Astrue*, No. 10 Civ. 6510(RWS), 2012 WL 1415322, at *2 (S.D.N.Y. April 18, 2012) (affirming denial of social security benefits when VE testified that claimant could work as a surveillance system monitor for which 1,200 jobs existed in the New York City area and 25,000 jobs existed nationally). Because the VE testified that 2,600 assembler jobs exist in the local economy and approximately 26,000 exist in the national economy, the Court finds that this job exists in significant numbers. *See Taylor*, 2012 WL 1520179, at *8. Therefore, the ALJ did not commit error by concluding at step 5 of her analysis that based on Plaintiff's age, education, work experience, and RFC, is there a job that exists in significant numbers in the national economy that he can perform.

21

Tr. 43.

## IV. Conclusion

The record contains substantial evidence from which the ALJ concluded that Plaintiff was not entitled to benefits under the Act during the time relevant to this case. The ALJ's decision was based upon substantial evidence and is free of reversible legal error. Accordingly,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  October 31, 2014                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge